**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED

November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.S.-1, C.S., X.S., B.S., and K.S.**

**No. 18-0692** (Marion County 16-JA-48, 16-JA-49, 16-JA-50, 16-JA-51, and 16-JA-147)

**MEMORANDUM DECISION**

Petitioner Father A.S.-2, by counsel David B. DeMoss, appeals the Circuit Court of Marion County's June 22, 2018, order terminating his parental rights to A.S.-1, C.S., X.S., B.S., and K.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Rebecca L. Tate, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, the DHHR filed a child abuse and neglect petition against petitioner and the mother alleging chronic hygiene issues and medical neglect. The DHHR alleged that the paternal grandfather took A.S.-1 to the emergency room for a laceration of the forehead because petitioner refused to take the child. While treating the child's laceration, medical personnel discovered an old burn on the child's hand and splinters in his hands and feet. The child was extremely dirty and reported that he could not sleep in his bed because it was covered in dog feces. Upon initiating an investigation, a Child Protective Services ("CPS") worker spoke to the child and discovered that his front teeth were nearly nonexistent due to their rotten state. The child disclosed that he did not own a toothbrush or toothpaste and that there was no running water in the home. The child showed the CPS worker a rash behind his knees and stated that his parents had taken him to the doctor and obtained a cream to treat the rash but failed to administer

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as A.S.-1 and A.S.-2, respectively, throughout this memorandum decision.

it. The CPS worker spoke to the grandfather and school staff, who confirmed chronic hygiene issues and medical neglect of the children. The CPS worker inspected the home and found it to be littered with trash, clothes, and dog feces. There was no running water in the home and the bathtub was filled with black water, which the mother indicated she washed the children's clothes in. In sum, the DHHR alleged that the parents failed to seek medical treatment for the children, failed to provide adequate supervision, and failed to ensure proper hygiene of the children.

The DHHR filed an amended petition in May of 2016, in which it alleged that the children disclosed domestic violence and explicit sexual knowledge. In July of 2016, the circuit court held an adjudicatory hearing wherein petitioner stipulated to the allegations contained in the petition regarding unsanitary conditions in the home and medical neglect. The circuit court accepted the stipulation, adjudicated petitioner as an abusing parent, and granted him a post-adjudicatory improvement period.

A second amended petition was filed in August of 2016, after the mother gave birth to K.S. in order to include the child in the proceedings. The parents were permitted to retain physical custody of the child. Petitioner stipulated to the allegations contained in the second amended petition in October of 2016.

In November of 2016, the DHHR filed a third amended petition alleging that petitioner failed to provide adequate medical care for K.S., who was diagnosed with respiratory syncytial virus. Specifically, petitioner took the child to the doctor, who determined that the child's oxygen levels were extremely low and informed petitioner that the child needed to be admitted to the hospital. Petitioner refused ambulance transport and took the child home. Petitioner eventually took the child to the hospital approximately two hours later, claiming he first needed to pack clothes for himself. The child remained in the hospital for four days. Following that incident, K.S. was placed in foster care.

Petitioner stipulated to the allegations contained in the third amended petition in January of 2017 and moved the circuit court for a second post-adjudicatory improvement period, which the circuit court granted. In June of 2017, the post-adjudicatory improvement period was extended for three months.

The circuit court held a dispositional hearing over the course of five days between December of 2017 and May of 2018. An evaluating psychologist testified that petitioner minimized the CPS referrals, blamed the grandparents for the situation, and did not acknowledge the allegations contained in the petition. Petitioner was unable to articulate his goals for therapy and stated that distancing his family from the grandparents would help reduce new allegations. The evaluating psychologist further testified that petitioner carelessly responded to tests, producing little useful data. Ultimately, the psychologist opined that petitioner's prognosis for attaining minimally adequate parenting was poor because he lacked the motivation to change and had not demonstrated any meaningful change in his behavior.

A CPS worker testified that petitioner demonstrated the ability to maintain a clean home while subject to inspection but failed to remedy the issue of medical neglect. The CPS worker

testified that petitioner delayed treatment of K.S. in 2016 and, more recently, failed to seek treatment for A.S.-1, who suffers from Henoch-Schonlein Pupura ("HSP") disease, while participating in an extended unsupervised visit. Petitioner contacted the grandparents to notify them of the child's symptoms and they advised him to take the child to the hospital immediately, but he failed to do so, resulting in the child's hospitalization. Moreover, the CPS worker reported that the children returned from extended unsupervised visits with petitioner in a filthy state, wearing the same clothes they were sent in, lacking underwear, and covered in flea bites. During the course of the proceedings, the parents voluntarily reduced their extended visits with the children so that the grandparents were responsible for taking them to school. Finally, the CPS worker testified that petitioner missed a number of visits with the children, failed to attend several multidisciplinary team meetings, and failed to present for drug screening. As such, the worker concluded that, despite participating in some services, petitioner had not made the changes necessary to remedy the conditions of abuse and there were no other services which could be offered.

A Court Appointed Special Advocate ("CASA") volunteer testified that petitioner made some progress during the proceedings, but the progress halted once his visits with the children became unsupervised. The CASA volunteer stated that the children had improved in their placement with the grandparents and that A.S.-1 requested that he not be placed back in petitioner's care.

Petitioner requested a post-dispositional improvement period, stating that he obtained better housing, attempted to keep the home clean, made an effort to increase the safety of the children while in the home, addressed the concerns of proper hygiene, and ensured that the children were properly fed. Petitioner indicated that he participated in all services required of him and was willing to participate in further services if necessary.

After hearing evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future due to petitioner's failure to adequately remedy the deplorable living conditions and medical neglect despite having been provided extensive services throughout multiple improvement periods. The circuit court denied petitioner's motion for a post-dispositional improvement period and terminated his parental rights, finding that it was in the best interests of the children. It is from the June 22, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[2]Both parents' parental rights were terminated below. A.S.-1, C.S., X.S., and B.S. were placed in the paternal grandparents' home with a permanency plan of adoption therein. K.S. was placed in a foster home with a permanency plan of adoption therein.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him a post-dispositional improvement period.[3] Specifically, petitioner argues that the record demonstrates that he was likely to fully comply with the terms of a post-dispositional improvement period because he accepted responsibility for his actions, participated in services, and made substantial progress in remedying the conditions of abuse and neglect. We disagree.

Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when

[s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in

---

[3]In support of his argument, petitioner states that the circuit court made erroneous findings and gave improper weight to certain witness testimony. For example, petitioner argues that the evaluating psychologist's testimony was conflicting in that she testified that petitioner blamed others for his situation while conceding that he admitted his parental shortcomings. Further, petitioner argues that the CPS worker inaccurately described petitioner's failure to seek medical treatment for A.S.-1's HSP condition as "recent" when it occurred at the beginning of the proceedings and was addressed by petitioner. Petitioner also takes issue with testimony that indicated he had not remedied his medical neglect of the children, stating that he sought medical attention for an ear infection and treated the children's flea bites with a home remedy. Petitioner argues the circuit court erred in finding that his children returned from visits hungry when he presented the testimony of his therapist who testified that he observed petitioner cook appropriate meals for the children. We have long held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As the trier of fact, the circuit court was in the position to hear testimony, weigh credibility, and make determinations regarding these issues. Having reviewed the record, we find that there was sufficient evidence to support the circuit court's findings and decline to disrupt the same.

4

circumstances, the [parent] is likely to fully participate in the improvement period[.]

Here, petitioner was granted two six-month post-adjudicatory improvement periods and a three-month extension. As such, he was required to demonstrate a substantial change in circumstances in addition to his likelihood of fully participating in an improvement period. However, in his brief on appeal, petitioner does not indicate where in the record he established any substantial change in his circumstances. Moreover, he fails to demonstrate that he was likely to fully participate in an improvement period.

The record demonstrates that petitioner was granted services over the course of nineteen months but failed to satisfactorily address the conditions of abuse. Petitioner failed to timely seek medical treatment for both K.S. and A.S.-1, resulting in their hospitalization, and failed to attend many of the children's medical appointments because they conflicted with his personal schedule. Petitioner missed visits with the children and, when he did participate in visits, failed to address proper hygiene. The CPS worker testified that the children were returned to their respective placements in a filthy condition, wearing the same clothes they were dropped off in, and often lacking underwear. Further, petitioner voluntarily reduced the visits with the children, delegating the responsibility of taking the children to school to the grandfather, and, in one instance became angry when the grandfather brought the children for their scheduled visit. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)).

Here, the CPS worker concluded that petitioner exhausted the amount of referrals that one could receive during a case and stated that there were no other services available to help petitioner correct the conditions of abuse. The evaluating psychologist agreed that petitioner's prognosis for attaining minimally adequate parenting in the near future was poor and testified that petitioner blamed his parents for the referrals, carelessly participated in his evaluation, and was unable to articulate what behavior he needed to change through services. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based on the evidence presented above, we find that petitioner failed to demonstrate that he was entitled to a post-dispositional improvement period.

5

We further find no error in the circuit court's decision to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

The record demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Petitioner failed to adequately address the conditions of abuse after nineteen months of services and exhausted his available resources in that there were no other services that could be offered. Despite participating in numerous services, petitioner failed to properly address the children's hygiene and, following extended visits, sent the children to their respective placements dirty and improperly clothed. Petitioner failed to initiate some visits, shortened his visits, and delegated the responsibility of getting the children to school to the grandfather. Testimony established that the children exhibited negative behavior following visitation and A.S.-1 stated that he did not want to return to petitioner's care. While petitioner argues that he should have received a post-dispositional improvement period, we note that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Having reviewed the record, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future due to his failure to address the issues during previous improvement periods and further find that termination of his parental rights was necessary for the children's welfare. Accordingly, petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 22, 2018, order is hereby affirmed.

6

Affirmed.

**ISSUED**:  November 21, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment